UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| PAINTING AND DECORATING CONTRACTORS OF AMERICA SOUTHERN NEVADA CHAPTER,<br><br>Plaintiff,<br><br>v.<br><br>INTERNATIONAL UNION OF PAINTERS AND ALLIED TRADES DISTRICT COUNCIL 15 LOCAL UNION 159 and WESTERN WALL & CEILING CONTRACTORS ASSOCIATION,<br><br>Defendants. | 2:07-CV-01271-LRH-LRL<br><br>ORDER |

Before the court is Defendant International Union of Painters and Allied Trades District Council 15 Local Union 159's ("Painters Union") motion to dismiss for failure to exhaust nonjudicial remedies (#18[1]). Plaintiff Painting and Decorating Contractors of America Southern Nevada Chapter ("PDCA") filed an opposition to this motion (#22) to which Painters Union replied (#23).

**I.    Facts and Procedural History**

Plaintiff PDCA is an employer association, which has entered into a series of collective

---

[1]Refers to the court's docket

bargaining agreements with Defendant Painters Union since 1949. The parties' current collective bargaining agreement ("CBA")[2] became effective on July 1, 2007, and will extend through June 30, 2011. As part of the CBA, the parties agreed that Defendant Western Walls and Ceilings Contractors Association ("WWCCA"), which is also an employer association, would be a signatory to the CBA.

Under Article 13 of the CBA, PDCA administers an Industry Promotion Fund ("Fund"), which is aimed at "the betterment of the Union Painting Industry." The Fund is funded through contributions made by signatory employers to the CBA based on each hour of employee work. Article 13, section 3 of the CBA provides that even when an employer does not belong to PDCA, but to another employer association, all of the contributions will be paid exclusively to the Fund and administered by PDCA. However, WWCCA would nevertheless be entitled to Fund monies that are "attributable to Drywall Finishing hours performed by employees of WWCCA proxied Employers."

Article 23 of the CBA establishes a Painters Joint Committee ("PJC") to decide disputes regarding the CBA. Article 23 provides, in pertinent part, that

> The Committee is hereby vested with power to adjust all disputes and grievance [sic] that may arise out of the application or interpretation of this agreement and shall be empowered to interpret and make such rules and regulations as may be necessary to give force and effect the intent, purpose and meaning of this Agreement.

When the PJC is unable to reach a decision, "the grievance or interpretation of the Contract shall be submitted to arbitration . . . ."

After executing the CBA, Defendant Painters Union entered into a separate agreement with

---

[2] While this court will refer to parties' agreement as the CBA, there appears to be two documents that comprise the CBA. In Thomas Pfundstein's declaration, he states that the parties "entered into a new Master Labor Agreement . . . for the term of July 1, 2007 to June 30, 2001 by executing a Memorandum of Understanding . . . . The parties agreed in the [Memorandum of Understanding] to adopt the terms of the expired master agreement except as specifically set forth in the [Memorandum of Understanding]."

2

WWCCA. This agreement provided that WWCCA would be entitled to all of the contributions submitted on behalf of hours worked by WWCCA employees, even if the hours were not attributable to drywall finishing work.

PDCA alleges that Painters Union's conduct breached the CBA and has caused PDCA to experience a depletion of funds. In support of this contention, PDCA's second amended complaint sets forth three counts against Painters Union alleging (1) Breach of Contract (Damages), (2) Breach of Contract (Specific Performance), and (3) Breach of Contract (Recission).

In its present motion to dismiss for failure to exhaust nonjudicial remedies, Painters Union argues that this court lacks jurisdiction over the claims against it because PDCA failed to submit the dispute to arbitration.[3]

## II. Legal Standard

A failure to exhaust nonjudicial remedies is properly raised in a motion to dismiss. *Inlandboatmens Union of the Pac. v. Dutra Group*, 279 F.3d 1075, 1083 (9th Cir. 2002). While a failure to exhaust nonjudicial remedies is "related" to a court's jurisdiction, such a failure does not fall within any of the categories of reasons for dismissal specified in Federal Rule of Civil Procedure 12(b). *Id.* at 1078 n.2. Therefore, a motion to dismiss for failure to exhaust nonjudicial remedies is properly considered a nonenumerated Rule 12(b) motion. *Id.* In deciding a motion to dismiss for failure to exhaust nonjudicial remedies, a court is free to hear evidence regarding jurisdiction and to resolve factual disputes in determining whether it has jurisdiction over a claim.

---

[3]The court recognizes that after Painters Union filed its motion to dismiss, PDCA filed a second amended complaint. The second amended complaint does materially alter nature of the claims asserted against Painters Union, however. Thus, the court will consider the motion to dismiss as though it were addressed to the second amended complaint. *See* 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1476 (2d ed. 1990) ("[D]efendants should not be required to file a new motion to dismiss simply because an amended pleading was introduced while their motion was pending. If some of the defects raised in the original motion remain in the new pleading, the court simply may consider the motion as being addressed to the amended pleading. To hold otherwise would be to exalt form over substance.").

3

*Id.* at 1083.

### III.  Discussion

Section 301 of the Federal Labor-Management Relations Act ("LMRA"), 29 U.S.C. § 185, provides the relevant authority for considering the present motion to dismiss.  In *Textile Workers Union v. Lincoln Mills*, the United States Supreme Court announced that section 301 of the LMRA "authorizes the federal courts to fashion a body of federal law for the enforcement of . . . collective bargaining agreements and includes within that federal law specific performance of promises to arbitrate grievances under collective bargaining agreements."  353 U.S. 448, 450-51 (1957). Pursuant to this authority, the Supreme Court has since stated that "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.  Doubts should be resolved in favor of coverage."  *United Steel Workers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960).  The party challenging arbitrability bears the burden of showing the collective bargaining agreement excludes a particular dispute from arbitration.  *United Bhd. of Carpenters & Joiners, Local No. 1780 v. Desert Palace, Inc.*, 94 F.3d 1308, 1310 (9th Cir. 1996).

Moreover, although generally the question of whether a dispute is arbitrable is decided by the courts, where "the parties clearly and unmistakably provide otherwise, the courts will be divested of their authority and an arbitrator will decide in the first instance whether a dispute is arbitrable."  *Id.* (internal quotation marks omitted).  The threshold issue this court must decide, therefore, is whether it is proper for this court to decide arbitrability or defer this question to the arbitration process specified in the CBA.

In *Desert Palace*, the Ninth Circuit was faced with an arbitration clause quite similar to the one included in the present CBA.  The clause stated that the parties agreed to arbitrate all disputes "regarding the interpretation or application of the provisions of this Agreement raised by the Union

4

or the employee alleging a violation of the terms and provisions of the Agreement." *Id.* at 1310.[4] The *Desert Palace* court found that the arbitration clause was so broad that there was no question the parties agreed to let the arbitrator decide abitrability. *Id.* The court also noted that the agreement did not exclude arbitrability or jurisdictional disputes from the arbitration process. *Id.* Therefore, Ninth Circuit held that the arbitrator was properly directed to decide the question of arbitrability. *Id.*

Turning to the present case, for all practical purposes, the arbitration clause in the CBA is identical to the arbitration clause in *Desert Palace*. Specifically, both clauses include language stating that the arbitrator is given authority to decide disputes regarding the "application or interpretation" of the agreements. Further, like the arbitration clause in *Desert Palace*, the CBA does not exclude arbitrability or jurisdictional disputes from the arbitration process. Therefore, given the similarity of the CBA's arbitration clause to the clause in *Desert Palace*, the court concludes that the issue of arbitrability falls to the CBA's arbitration process.

Although this conclusion disposes of the present motion, the court will address a few of the arguments PDCA has raised in opposition to the motion to dismiss. First, PDCA argues that the CBA's arbitration clause is unconscionable and was procured by fraud; therefore, this court must set aside the agreement to arbitrate pursuant to its lawmaking power under section 301 of the LMRA. As stated previously, federal courts are authorized to develop federal common law in order to enforce collective bargaining agreements. *See Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 450-51 (1957). Furthermore, the District of Columbia and the Seventh Circuit have held that courts can look to the Federal Arbitration Act ("FAA") as a guide in fashioning federal common

---

[4]By comparison, the CBA in this case provides that "[t]he Committee is hereby vested with power to adjust all disputes and grievance [sic] that may arise out of the application or interpretation of this agreement and shall be empowered to interpret and make such rules and regulations as may be necessary to give force and effect the intent, purpose and meaning of this Agreement." (Master Agreement (#18), Ex. A at 41.)

5

law under LMRA section 301. *Am. Postal Workers Union v. U.S. Postal Service*, 52 F.3d 359, 362 (D.C. Cir. 1995); *Glass Workers Int'l Union, Local 182B v. Excelsior Foundry Co.*, 56 F.3d 844, 848 (7th Cir. 1995). Thus, PDCA argues this court should deny the motion to dismiss based upon the FAA's provision that agreements to arbitrate are enforceable "save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

PDCA's arguments fail even if this court were to accept its argument that this court should adopt the FAA's framework in deciding whether an arbitration clause is enforceable. As a preliminary matter, the Supreme Court has held with respect to the FAA that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983). Thus, PDCA's contention that the CBA's arbitration clause is unconscionable and was procured through fraud should be viewed through the prism that any doubt concerning a defense to arbitrability must be resolved in favor of arbitration.

In *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257 (9th Cir. 2006), the Ninth Circuit discussed how courts should decide whether a party may resist arbitration using a defense under 9 U.S.C. § 2, that is, "upon such grounds as exist at law or inequity for the revocation of any contract." The plaintiff in *Nagrampa* had entered into an franchise agreement with the defendant, the franchisor, to establish and operate a direct mail coupon advertising franchise. *Id.* at 1265. After the plaintiff experienced losses in her business endeavor, she terminated the franchise agreement. *Id.* The defendant then initiated arbitration proceedings, claiming that the plaintiff owed it more than $80,000. *Id.* In response, the plaintiff filed suit alleging that the defendant was guilty of misrepresentation and fraud. *Id.* at 1266. Most important to the issue at hand, the plaintiff also set

6

forth two causes of action[5] challenging the validity and enforceability of the arbitration clause contained in the parties' franchise agreement. *Id.* at 1266. The Ninth Circuit held that because the plaintiff "challenged the validity of the arbitration provision separate from any litigation over the entire contract," the district court appropriately considered the enforceability of the arbitration clause. *See id.* at 1277.

*Nagrampa*'s holding controls the efficacy of PDCA's argument that the CBA's arbitration clause is unconscionable and was procured by fraud. According to *Nagrampa*, this court must look to the "crux of the complaint" to decide whether PDCA's challenge is to the contract as a whole or, instead, to the arbitration provision. *See id.* at 1266. Each of the counts alleged against Painters Union in PDCA's complaint contain two paragraphs alleging the following: (1) "The [CBA] [does] not contain a grievance/arbitration procedure that covers the dispute in issue herein" and (2) "The [CBA] [does] not contain an impartial grievance/arbitration procedure that covers the dispute in issue herein." (Second Am. Compl. (#30) at ¶¶ 17, 18, 23, 24, 27, 28.)

With respect to the first of these paragraphs, it is readily apparent that this allegation is not a challenge to the validity of the arbitration provision. Rather, the paragraph states only that the current dispute is not covered by the CBA's arbitration clause. As stated above, whether the current controversy falls within the scope of the arbitration clause is an issue for the arbitration process.

The second paragraph presents a closer issue. However, given *Moses Cone*'s instruction that this court is to decide doubts about the validity of a defense to arbitrability in favor of arbitration, the court concludes the paragraph is not a separate challenge to the arbitration clause "upon such grounds as exist at law or in equity for the revocation of any contract."

---

[5]The complaint in *Nagrampa* was originally filed in California state court. Thus, the complaint set forth its counts as "causes of action." *See* Cal. Civ. Proc. Code § 425.10(a)(1). This denomination differs from the Federal Rules of Civil Procedure, which require "a short and plain statement of the claim showing the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2).

9 U.S.C. § 10(a)(2) provides that an arbitration award may be vacated "where there was evident partiality or corruption in the arbitrators, or either of them . . . ." Thus, according to this subsection, a challenge to an arbitrator's impartiality is appropriately brought after the award has been rendered. While a party may resist arbitration under the FAA "upon such grounds as exist at law or in equity for the revocation of any contract," PDCA's complaint does not make clear that its challenge is based upon one of these grounds.

The court's conclusion is further supported by the Ninth Circuit's cases regarding the standard by which a party may challenge the impartiality of an arbitrator. For instance, in *Sheet Metal Workers Int'l Ass'n Local Union No. 420 v. Kinney Air Conditioning Co.*, the court stated that "[t]he party alleging evident partiality must establish specific facts which indicate improper motives on the part of the [arbitrator]. The appearance of impropriety, standing alone, is insufficient." 756 F.2d 742, 746 (9th Cir. 1985). Furthermore, in *Sheet Metal Workers Int'l Ass'n, Local No. 162 v. Jason Mfg., Inc.*, the court declared that "[w]hen the parties have agreed upon a particular method of dispute resolution, it should generally be presumed fair." 900 F.2d 1392, 1398 (9th Cir. 1990). The Ninth Circuit's case law thus contemplates challenges based upon arbitrator bias after the arbitration award has been rendered and partiality was made manifest.[6] Therefore, because PDCA's complaint relies on an allegation concerning impartiality to resist arbitration, which must wait until after an award, the court finds that PDCA's complaint has not made a separate and distinct challenge to the arbitration clause "upon such grounds as exist at law or in equity for the revocation of any contract."

As a final matter, although PDCA argues there is a dispute concerning the composition of the PJC, such procedural issues are for the arbiter to decide. *See John Wiley & Sons v. Livingston*,

---

[6]The Fourth Circuit has made this point explicitly: "Generally, objections to the nature of arbitral proceedings are for the arbitrator to decide in the first instance. Only after arbitration may a party then raise such challenges if they meet the narrow grounds set out in 9 U.S.C. § 10 for vacating an arbitral award." *Hooters of America, Inc. v. Phillips*, 173 F.3d 933, 941 (4th Cir. 1999).

376 U.S. 543, 557 (1964).  The court will note, however, that it is encouraged by Painters Union's representation that "any bias in the constitution of the Painters Joint Committee is irrelevant at this point in the dispute since Painters Union has offered to PDCA the opportunity to arbitrate . . . ." (Mot. to Dismiss (#18) at 7.)  As such, it appears Painters Union has offered to avoid procedural disputes regarding the PJC's composition by allowing this dispute to be submitted directly to an arbitrator.

    IT IS THEREFORE ORDERED that PDCA's motion to dismiss (#18) is GRANTED.

    IT IS SO ORDERED.

    DATED this 8th day of October 2008.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE